The Fourth District Appellate Court of the State of Illinois has reconvened. The Honorable John W. Turner presiding. Thank you. Our second and last case this afternoon is People v. Rodolfo Luna. That's case number 4-2-3-0-0-2-4. Will counsel for the appellant please identify yourself for the record. Yes. Good afternoon, Your Honors. David Harris on behalf of Appellant Rodolfo Luna. Thank you, Mr. Harris. And counsel for the appellate please state your name for the record. Good afternoon, Your Honors. Nicholas Atwood on behalf of the People of the State of Illinois. Very well. Mr. Harris, are you ready to proceed? Yes, I am. Please do so. Thank you. May it please the court, counsel. In this case, the state has conceded that the trial court violated my client's due process rights by keeping him shackled in leg and arm shackles at the outset of trial. So the question is whether this amounts to plain error. Now, the first step of plain error is whether clear and obvious error occurred and the state agrees it did. So really what it boils down to and what remains is to decide whether the evidence in this case was closely balanced. Well, counsel, isn't there another issue in this case when you say it's plain error, namely acquiescence by defense counsel? In other words, isn't it correct that when the court offered to conduct a further hearing on this bizarre, and let me preface this by saying this whole thing is bizarre to me. I don't understand what the judge could possibly be thinking after the Supreme Court rule in the Booth case that somehow this is just normal stuff and we're just going to have people chained even in the bench trial. But leave that aside for the moment. The judge talks about how here's the defendant and what are the security concerns and I'm wondering about what they are. And then offers to conduct a further hearing and whether the restraints should be removed. Defense counsel accepted and when prompted by the court, isn't it correct that defense counsel clarified she only sought removal of restraint from the defendant's hands and not his feet? And didn't that happen? Yes, that happened after the state rested its case in chief, before the defendant was about to testify. And in his brief, the state, and I agree, says that this court doesn't even need to reach counsel's error or any possible invited error because there was already a due process violation at the outset of trial by the judge that was not requested by the defense counsel. So in other words, my question about the timing was he was present throughout the state's case in both shackles. Yes. And it was only a business about undoing the hand shackles only occurred before he testified in the defense case. Correct. Okay. And like I said, the state says that you don't even need to reach that, though we did argue alternatively counsel was ineffective for not requesting for everything to be removed and not doing so at the beginning of trial. But the case law interprets this as plain error where there's no discussion of shackles before trial starts. The Supreme Court decision in People v. Allen reviewed for plain error where there was no request to remove shackles. The case I've cited from the third district, People v. Williams, which is eerily on point with this case, also examined for plain error where like here there was a trial request to remove the handcuffs. And so it does boil down to whether the evidence is closely balanced. And this case was a credibility contest with a complainant testified my client committed a crime. My client testified that he didn't. The judge below recognized that this case turned exclusively on who the court found credible. And we know from Supreme Court precedent that when the case comes down to witness credibility and as a contest of credibility with two plausible versions, the case is by law closely balanced for plain air review. I'm sorry. What case says that? What Supreme Court case says that? People v. Sebi, People v. Naylor. They both discuss how Payette-Kowalski, any case on closely contest, the case is closely balanced. Now, People v. Sebi said it pretty clearly that as long as there are two plausible versions of events, which we have here, and neither of them are fanciful on their own, the case is closely balanced. Counselor, if I may. Yes. Aren't those cases distinguishable? In this case, the trial court indicated in its ruling, it was not even sure that the defendant was talking about the same event. And so they went through those credibility issues. But also in this case, and we do review this under the totality of the circumstances, isn't the grandfather's corroboration of the victim's testimony that she stayed the night, she didn't call him to pick up, doesn't that make this case distinguishable from the other three you have cited with regards to Williams, Naylor, and Sebi? Yeah, I'll take both of those points. As far as the court below, the court framed this explicitly as a credibility determination, found my client not credible, found the complainant credible. And that's what this case did come down to. Even if the judge wasn't sure if he was talking about the same incident, it's clear he said there was only one sleepover that occurred on the trampoline. So it was the same incident. Whether some of the details may have been from other sleepovers because she slept over at the house before and continued to after doesn't really affect the fact that this is a credibility contest. And then as far as the grandfather, yes, the complainant was corroborated on this collateral fact of whether she was picked up that night or not. And my client was contradicted on that. But that is just like the other cases. In Sebi, there were two police officers who corroborated each other and contradicted the defendant. The defendant in that case had a couple other defense witnesses too. They found that closely balanced. In Williams, cited in the brief, there were four witnesses for the state. There was the complainant, three other witnesses who corroborated the complainant with three of her prior 115-10 consistent statements that came in, including a videotaped forensic interview that was played for the judge in that bench trial. So the defendant was contradicted by three other witnesses. That was still found to be closely balanced evidence and a credibility contest. But in Sebi, if I will, the statement by the court was minor inconsistencies clouded the testimony on both sides, but neither the prosecution or the defense accounts of that morning events were fanciful. Isn't that distinguishable from the case here where the trial court specifically said at times that the defendant's statements didn't make sense and he didn't even think it was about the same event? Thus, the grandfather's statement of corroboration as to that event would distinguish that. So I go back to that. Is there a difference then if we're not talking about the same event where in all three of those cases you were part of this, even though there were different versions, it was very clear they were all discussing the same event? I don't think so because he was talking about the one time they slept on a trampoline and regardless of the specifics of the event, he also denied ever improperly touching her and inappropriately touching her. So he denied what she alleged and it turns on credibility and it still turns on her credibility. Even if he didn't testify, this could be closely balanced because it depends on her credibility. In Piotrkowski, in the Supreme Court, there were two occurrence witnesses for the state. There was zero for the defense. They had one defense witness who impeached or contradicted the state's witness on some other collateral matters. The court found that that was closely balanced evidence. In People vs. Mullen, another Supreme Court case cited in the briefs, there was no defense evidence at all and there was even a confession by the defendant and the court found the evidence closely balanced because it turned on the credibility of those witnesses. There was no physical evidence, no video evidence, nothing to corroborate anything. It depended on witness credibility, but here I do believe my client disputed the allegations enough to make this a credibility contest, just like in these other cases where there might not even be a direct contradiction like we have here. I would also direct this court to People vs. Williams, which I've discussed a it's a nearly identical case. There's a sex offense against a minor. It was a bench trial like here. The complainant testified. The defendant testified and denied it. There, like I said, the complainant was bolstered and corroborated by three prior consistent statements to a DCFS investigator, a therapist, and the videotaped forensic interview. The court still found it was closely balanced and reversed and remanded for a new trial. Importantly, the court remanded for a new trial, not a retrospective boost hearing in part because just like here, I'm sorry. Well, and I guess in part that was because in the Williams case was there not in essence, the judge said that was their policy to keep the defendant shackled even except for times of testimony. Yeah. And also because the court like here was asked mid trial to consider boost factors and determined that the handcuffs could come off. And that's the same thing that happened here. The court made a record that there was no known gang activity, no threats of violence, no threats of escape. So there's really no record that needs to be developed on a remand to further examine whether my client should have remained shackled during trial because we know the trial judge found it wasn't even necessary. Once it was finally brought to the judge's attention and the judge conducted this, this review, it just should have happened at the time. And he should have been free to stand trial with the dignity of a man who's presumed innocent of these charges. There was the packet from DOC though, in this case that did talk about close supervision slash constant restraints. So as far as developing a record, is it not possible that, and I agree, the record does not set anything forth other than about the hand shackles that there might be something further to develop as it would relate to the leg shackles since he did remain shackled during that time? No, I mean, the judge reviewed this packet and said no threats of assault, no threats of escape, no gang activity. But he was only reviewing that with regards to the hand shackles, correct? Sure, but there wouldn't suddenly be gang activity when considering the leg restraints as well. But regardless, the hand shackles enough, the handcuffs are enough, are error. Even if we ignore the leg shackles, being handcuffed from the beginning of trial until his testimony is error, just like in Williams, and the state concedes that. I guess my focus is on a remand, if this court were to find that that was appropriate. Well, remand for a retrospective boost hearing is... Or to reverse and send back. Because you mentioned the new trial versus a retroactive boost hearing. Right, and I don't think it's necessary because the judge already found handcuffs were not necessary. They should weren't off at the beginning of trial, and the court made it clear on the record at that point they weren't needed. Same thing happened here. The court, before my client testified, made a record that handcuffs were not needed. And so there was an error of being in handcuffs irrespective of the leg shackles. And so there's no need for a retrospective hearing on leg shackles because there's the error that the state has already conceded. And we know from the trial court statements on the record that a retrospective hearing would not change that. Well, what does close supervision slash constant restraints, what does that mean? It indicates IDOC wanted him restrained, but then in the rest of the information the judge had from IDOC, it showed no reason for restraint. And what it comes down to is IDOC or the sheriffs or any sort of custodial authority does not control whether a defendant is shackled in the courtroom. The Supreme Court has made this clear. People v. Reese, the Supreme Court found error and criticized the trial judge for merely deferring to the sheriff's desire to have the defendant shackled. It's up to the trial judge to find a manifest need for restraints, not simply to defer and rely on the policy of whoever has physical custody of the defendant as they're I want to ask you, counsel, would you consider the grandfather's testimony corroboration of what the victim said or would you consider it to be impeachment on a collateral matter? I think it corroborates and impeaches on a collateral matter on what happened after the alleged incident on the trampoline. Well, let me rephrase it then. Normally you don't put on evidence to corroborate something that's already been said. What happened here is the defendant testifies and I think the defendant said that the victim went home that night. Now had the victim or the defendant not testified, grandfather's testimony would have never been admissible, would have it? Because I think it would be admitted to impeach. It might not have been relevant absent his testimony about what occurred the rest of the night. So then, yes, that would be impeachment on a collateral matter. And you and then again, you're saying that this would be a collateral matter because explain because it does not relate to the allegations here. It's all something that happened afterwards. It's not important to the determination of whether he improperly touched the complainant for the purposes of sexual gratification. It's just a matter of what happened after they had. They contradicted each other on various other points of whether the who she first entered the house with, whether it was his daughter or stepdaughter, about whether the net on the trampoline was taken down, all these other kind of scene setting context of the evening, but not they don't go to the heart of the matter whether he was guilty of the crime he was accused of. And if there are no further questions, I would ask this court to view this case, just like the third district did in Williams, which was also a bench trial with handcuffs removed mid trial, where there was far more evidence corroborating the complainant than in this case, and reverse and remand for a new trial. Okay, you will have rebuttal if you so desire. Before we move on to Mr. Atwood's argument, I want to ask of Justices Steinman and Leonard, I'm still hearing a little feedback. It's not so bad that I'm not following the arguments, but are either of you having any feedback? Then, again, I'm hearing something, but I think I'm following everything. So without further ado, Mr. Atwood, please proceed with your argument. Thank you, Your Honor. May it please the court, counsel. The primary issue that has been identified is whether a plain error occurred. There's no contest in the record that Defense Counsel failed to object in a timely manner. The question became whether a clear error not to raise the boost issue at the outset of the trial, as opposed to after the state's case in chief. So the question then becomes whether or not a defendant has showed that the evidence was closely balanced, such that the error alone threatened to tip the scales of justice against the defendant. In reaching this conclusion that he has not met his burden, I think Justice Leonard has made an interesting point. Throughout his briefing, the defendant is arguing that simply because this was a case of witness credibility, there is some presumption that the evidence is closely balanced. In his brief, he refers to it as being necessarily close on page 12. But that's not what Naylor and Seve said. There is a condition precedent, and that is the court must find that the witnesses are credible at the outset. If the accounts are evidence, if HB here testified that the sky is blue, and defendant testified that the sky is purple, one of those accounts is credible and one of them is not. But simply because they're both testimonial in nature doesn't mean that the evidence is closely balanced. And so I think we have to look at these facts framed in that context. And fortunately, the trial court gave us an extensive ruling with regard to both of these parties credibility. The court testified here that HB was a very credible witness. She was very mature, articulate, clear, and concise, not the least bit evasive. She was not impeached. Her answers were direct to the questions that were asked. She answered them confidently, and she didn't embellish what happened. The court also found that she had no reason to lie about what happened in these events. As far as the defendant goes, as the justices have touched upon, there were times where his what he was talking about, it was almost incoherent, whether he was talking about this incident, or as the trial court stated, if he wasn't talking about that, if he was talking about this incident, then he quote, materially misstated the evidence. The court found that he was not credible. There were a number of things that he testified to that were inconsistent, both with regard to collateral facts as well as with the victim's testimony. And based upon that, the court simply found he wasn't credible. So this is not like what happened in Seve and in Naylor. In Seve, the officer's testimony was consistent, and the defendant's testimony was consistent with the altercation that occurred. And the defendant's witnesses also offered a consistent account. There were just a few minor discrepancies. Let me stop there, counsel. Consistent is not the same thing as credible. And what you said a few moments ago seemed to suggest to me that a trial court would find both the defense defendant and the victim credible. Well, if the trial court finds them both credible, wouldn't the trial court have to acquit? So I'm not following what you're saying there. Well, it's in the context of the argument. So the credibility determination here differs from a reasonable doubt determination. It's simply in the context of the question, is this evidence closely balanced? We're looking at whether or not they're credible. And it's not just credibility, it's also plausibility, as Justice Lanard noted. And so here, the court simply found the defendant's version of events wasn't plausible. But in Seve, while there were a few minor inconsistencies, the fact remained, all the people were testifying credibly and plausibly. Therefore, the evidence was closely balanced. In Naylor, it was a similar situation. You had officers testifying similarly to each other, you had a defendant who offered a different account, but the court found that it was a plausible or credible account. And it hinged in that case on the fact that the defendant had a prior conviction erroneously admitted against him that went straight to his credibility. So the issue was whether he was credible, and the error went directly to that. So there's a case I want to ask you about. The Illinois Supreme Court addressed this question of whether or not the evidence in a criminal case is closely balanced when there is a claim of error. That was in People v. Williams in 19 or 2022, where the third district reversed a conviction, finding there was error, and was looking to, because it wasn't, it was a plain error question, was the evidence closely balanced? They found it was closely balanced, and Justice Schmitt dissented. And he wrote this, he said, your defies the evidence closely balanced because of a credibility contest. What credibility contest? Not one witness contradicted the witness's, the victim's testimony. There was no competing version of the events and so forth. Case went up to the Illinois Supreme Court, and the Supreme Court agreed with Justice Schmitt, and reversed the third district, and said, there weren't two different accounts here. The defendant didn't have to testify, but when he didn't testify, there was only this one account, and there was no basis upon which to view this as competing accounts. And ultimately, the Supreme Court further found that the evidence was not closely balanced. The point about this is, however, that here we have two accounts. We have the defendant, who said it didn't happen. We have the victim, who said it did happen. And we have what strikes me as pretty minimal corroboration, if any, by the grandfather on kind of an issue, which is perhaps helpful, not all that much. And as I struggle with the term and try to figure out what this closely balanced evidence means, it seems to me that we're at the pretty far end here, by Mr. Atwood, as far as naming this not closely balanced, where we have essentially nothing besides the victim and the defendant who have come up with competing versions of events. What am I missing here? Why should this be viewed as not closely balanced? What's going on? Okay. Well, first of all, with regard to the Williams Supreme Court case, I'm not prepared to discuss that today. So to the extent this court would rely on that, I don't believe it was cited in either party's brief. So I would request a motion to supplement and allow for briefing on that limited issue to the extent this court would find that appropriate. With regard to your question of what you're missing, I think what's missing is the briefs did a really good job of muddying the waters as to the standard. And I think what is missing is looking at Semmy, looking at Naylor. These are the seminal cases that are dealing with this, he said, she said, how close is this evidence? Is it closely balanced? And the fact remains, a credibility determination is the difference. You have to have it as a conditioned precedent before you can even assess whether the following evidence is closely balanced. The record that we have, we have the trial court who had the benefit of observing the nature of the victim, the nature of the defendant while they were testifying, and making conclusions on credibility based upon that. And she provided us with an extensive record based on it. So I guess this question also, I've been on this court a long time, as Justice Turner, and the reason I mentioned that is we've been dealing with this nonsense, particularly from Livingston County, of all places in the state, of shackling defendants at trial, more so, you know, it's the indoor record, I think Livingston County might have more of this than the rest of the 101 counties combined. And I'm shocked, it's still going on. And this is an experienced trial judge who I'm, I think I have reversed multiple times on just this issue. I mean, at what point are we, is this court going to say we're not going to be bending over backwards? We're tired of this and we're not going to tolerate it anymore in reverse? Well, Your Honor, I think for one example, while the trial, while Livingston County, this is my first case of Livingston County, I practice in the third district, but the new nature of the appellate districts has changed our mission. But with regard to that, we have to consider the justice and we have to consider the victims as well. Who's dealt with the issue? Who set the precedent? You have to do it or else it's air. However, we have a defense counsel here and a defendant who did not properly preserve the air, so we are mandated to consider it under the plain air review context. So I've conceded this was clear air. It should have been done. I agree with you completely. Defendants should not be shackled without some sort of a case. What message are we sending to the trial judge in Livingston County? Business as usual? Keep shackling these people? Certainly not, Your Honor. I would first state that it isn't this court's decision to send messages using decisions that affect individuals such as the victims and as the other people of the state of Illinois who are represented by us. But secondarily, you can find that it aired. You can instruct the court that it aired in finding the first prong was satisfied. But the fact remains what the court did had no bearing on the actual evidence that was presented at the trial, whether it was posted balanced or not. So I think it would be erroneous and possibly problematic even to have this discussion for the purposes of a PLA that we would be sending this message using the victim in this case as some sort of a mechanism to do that. I agree completely. It's inappropriate practice and it's clear air. But with the facts to this case, a credibility determination was central to determining whether the evidence was closely balanced. And we have a good record for making that determination and finding that the evidence was not closely balanced because the defendant's version of events was simply not believable. And with regard to some of the cases the defendant cites in his reply brief, one thing I want to acknowledge, the Williams Third District case that was cited, the people I did commit an error in the brief, the victim in that case did testify. In the brief, I said the victim did not, but it's not dispositive of the issue because that case is easily distinguishable. In that case, the defendant always denied touching the victim. The victim's statements were contradicted by an independent physical exam that showed no evidence of sexual abuse and that the victim may have had a motive to lie because the defendant had punished her and her siblings. In this case, the defendant acknowledged that he touched the victim. The only thing he disputed was his intent, whether he did so knowingly, which is often an element that has to be proved using circumstantial evidence or reasonable inferences. So I don't think that's dispositive. Secondarily, the victim in this case had no motive to lie. The court even found that she had no motive to lie or stretch the truth. So I think in Williams, that case is easily distinguishable. Defense counsel cited Mullen in his reply brief for saying that you can present no evidence at all and a defendant can confess if you can still the evidence is closely balanced. With regard to Mullen, that case was decided 25 years or more before Sebi. One of the witnesses testified that they feared gang reprisal in exchange for their identification testimony. And the defendant's initial confession in that case was actually called into question because he also feared the possibility of gang reprisal, as was also the physical evidence with regard to who fired the shot that killed the victim. With regard to the competing accounts can still turn on the credibility of testimony. But in Piatkowski, the witnesses themselves were identification witnesses. And the clear error issue in that case was an improper identification instruction that was provided to the jury. And the court noted that the witnesses had inconsistent testimony amongst themselves. Maybe they believed their testimony that was possibly credible, but there were inconsistencies regarding how long they viewed the suspect, whether or not other suspects were within the same photo array that had a similar look. So it wasn't just that there was a credibility contest. It was an inconsistent testimony, you know, not necessarily credibility. So with regard to those cases, I just wanted to briefly distinguish those. I think ultimately, as I've mentioned before, I conclude the issue in this case is one of credibility. There is no presumption that a case is closely balanced simply because it is. And because the court made such in depth credibility findings, we have a good record for which this court can make that determination and find that the evidence wasn't closely balanced because defendants testimony was simply not believable. After all, his testimony was that these 10 or 11 year old girls required his placing them onto the trampoline in a certain order, showing them how to use the blankets to keep themselves warm, showing them how to warm themselves. That's where he stated that he thought he was rubbing his own daughter to show her how to keep warm if she got cold. But the victim testified there were no blankets, there were no sleeping bags. They got on the trampoline themselves. It was a warm, it was a nice weather. It was either August or early September. So we're talking about a warm summer's evening. There was no need for blankets at all. I think what the court was getting at is that this defendant is attempting to testify to a narrative that would explain, you know, accidentally touching the victim. But the fact remains that it was so implausible he could not be considered credible, whereas what the victim testified to, she did find to be credible. And with that, your honors, I would ask that this court find the defendant forfeited review of this issue because he failed to show how the evidence was closely balanced. Alternatively, though we conceded that counsel was unreasonable when she did not object at the outset and request a booze hearing before the trial started. There is no reasonable probability of a different result in this case for the same reasons argued in our brief and here in oral argument. And then finally, one note that defendant raised was that we raised a structural error argument in this case and that he did not raise one in his original brief. I just note that the people did that in the interest of possibly preserving that argument for appeal. If this case does go to the Supreme Court, there have been various attacks by defendants trying to make novel arguments on why booze violations should be so in the interest of not forfeiting a forfeiture argument, we raise that issue in our brief. And with that, your honor, the people ask that you affirm defendant's convictions and sentence. Thank you. Counsel, before you're finished, I'm looking at this third district Williams case. It seems to say, in my view, that if the case basically boils down to a credibility contest, then that means the evidence is closely balanced. Am I reading it incorrectly? My recollection of that case was that the reason that that was closely balanced was because there were other factors that supported that corroborated what defendant was saying. Whereas here, there were no factors that corroborated. So there's a factual distinction. Secondarily, and I think this sometimes happens with the waiver versus forfeiture argument from several years ago. I think the court was simply just a little bit sloppy in how they cited the rule. In the past, courts interchangeably use the term waiver and forfeiture with making plainer arguments. And recently, the court said, no, it's forfeiture, it's not waiver. I think what we have here is the court is paraphrasing SEBI. And that gives the impression that if it's just a credibility contest, it's automatic. But the language in SEBI was specific. They first found that the defendant's account was credible, and then they moved on to whether the evidence was closely balanced. So I think there's a condition precedent that's getting lost in the shuffle here. This is not presumed. There must be a credible determination that they are credible. And then we can assess whether this evidence that's been credibly presented is actually close or not. That's my contention. And I think that may be what happens in Williams. But I cannot recall the exact language. Did you notice? I think Justice McDade might have dissented. I don't recall who the author of that case was. I think it's Justice O'Brien who's now on the Illinois Supreme Court. That is correct. And yeah, I see that now. Okay, one other thing. The trial court, I'm still hearing, getting a lot of feedback. It must be in my system. Can you hear me? I'm hearing the feedback from your mic, yes. Okay. I don't know how to address it. I'm going to try to speak a little softer. Maybe that will help. It bothers me that the trial court found grandfather's testimony as corroborative of what the victim said happened to her. But it seems to me, if something happened to the victim of a sexual nature, then she would have gone home, would have called her grandfather, or would have walked on home, rather than spend the night. And it seems like the trial court put way too much emphasis on what the grandfather testified. Who, by the way, the transcript of that testimony is about one page. And the grandfather was not even asked what year it happened, what month it happened, what day it happened. Just so you remember, there was a sleepover with a trampoline. And did your granddaughter come home that night or the next morning? And I really have a hard time finding why the trial court would have put much, if any, emphasis on that. I guess that's a statement rather than a question, but you may respond if you'd like. Thank you. I would like to respond. With regard to the victim's actions after the fact, there's case law that says various different things. Victims react in different ways when they've experienced that kind of abuse. For example, we do know that she did at least extricate herself from the situation. She went inside with her friend, and they went to her friend's room, and she stayed the night there. Maybe she wasn't able to process it. It's hard to say, but she did say that she left the next morning, and the grandfather did at least corroborate that. As far as the weight to be given to the grandfather's testimony, obviously, even without it, there was a lot of evidence that was inconsistent with the trial court note that she mentioned. The grandfather did essentially impeach a portion. Your Honors, I see that I'm out of time. May I briefly conclude? You may finish your remarks, but bring to a close. Thank you. As far as the grandfather was concerned, to the extent that that is fully impeaching, it's only just partially impeaching. It doesn't go to a material fact, but it does corroborate the victim's account, and it does call into further question the defendant's credibility with regard to the facts that occurred, even if it's not a material fact. I think as far as you're going to consider it as part of the court's ruling, you can just consider it as another factor that worked against the defendant's overall credibility. Thank you. Thank you, Mr. Harris. Do you have any rebuttal? Yes, I do. A few points. The last point about the grandfather's testimony, his knowledge that there was an evening on the trampoline itself would be based on hearsay of being told about this. Of course, there's no objection, but that affects the weight of his testimony. Now, what I heard from counsel throughout his argument was credibility, credibility, credibility. If you're assessing credibility, then the case is closely balanced. Counsel pointed out the trial court's findings of credibility, but you don't rely on that to determine if evidence is closely balanced. This isn't a challenge to the trial court's discretion to observe the witnesses and weigh credibility. It's not a challenge to the sufficiency of the evidence, whether any prior fact could believe one version over the other. The fact that these credibility determinations had to be made and have to be made by this court show that it's closely balanced. There was talk about SEBI. It's not that both sides have to be credible. It's they have to be plausible or not fanciful. Is there something not fanciful about my client's testimony standing on its own? If you ask him what happened last night, he said, my daughters had a friend over. They wanted to sleep over on the outside. We dragged the trampoline under the light, removed the net, brought them blankets. I got on the trampoline, covered them with blankets. I showed how to warm themselves up. My daughter or my stepdaughter pointed out, oh, you're warming up the complainant, not your daughter. Then he got off, went into the garage, had a cigarette with the girlfriend, got mad when the complainant and the stepdaughter left his daughter outside, and then went and got her brought in. There is nothing fanciful about that story. The only spot where the court below or opposing counsel sees that it breaks down is in contrast to the state's evidence, and that shows a credibility contest. His testimony is not inherently incredible. Now, there was talk about how the trial court thought maybe he wasn't even talking about the same night, which I've discussed in the opening, is that still a credible finding, but the court's statements on this, which are on page 162 of the record, is that there were points that whether or not the trampoline was moved closer to the house, whether it was taken off, those things were completely contradicted by the victim, which led me to conclude he was not talking about the same incident. So that belief that he might be talking about a different night is because she finds the complainant credible. It's not because of any inherent inconsistencies in his testimony, and I would urge you, his testimony is not long, I would urge you, if you think that the trial court found his testimony inherently incredible without regard to the state's evidence, read it. It's consistent. It's clear enough. There is some confusion. There's a language barrier. He's testifying through an interpreter and he gives some run-on answers, but he doesn't contradict himself. He contradicts the complainant's story, and in making the findings below, the judge said he might not be talking about the same incident because the victim said some of this stuff didn't happen. That is a credibility contest. And I think that's my last point I want to make in rebuttal. If this court has any further questions, I would be happy to take them. If not, I would ask reverse and remand for a new trial. Okay, I see no further questions. The court extends its thanks to both of you. The case is now submitted and the court stands in recess.